UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CELTIC BANK CORPORATION, a Utah chartered bank, | ) ) ) | No. 15 CV 30 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Magistrate Judge Young B. Kim |
| EXECUTIVE TITLE, INC., f/k/a, Protect 1 Title, Inc., an Illinois corporation, MARTHA E. TOVIAS, and FERNANDO R. CARRANZA & ASSOCIATES, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | October 13, 2015 |

**MEMORANDUM OPINION and ORDER**

Plaintiff Celtic Bank Corporation ("Celtic") brings this suit seeking a judgment of foreclosure against Defendant Executive Title, Inc. ("Executive Title") because Executive Title allegedly defaulted on a loan Celtic had extended in connection with a purchase of real property. (R. 1, Compl. ¶ 1.) Celtic also seeks a judgment for breach of an unconditional guarantee against Defendant Martha Tovias based on this alleged default. Defendant Fernando R. Carranza & Associates is a tenant of the subject property. (Id. ¶ 9.) After Celtic instituted this action, Executive Title filed for bankruptcy protection, triggering an automatic stay of the case with respect to it. The parties disagree as to whether the case should proceed against Tovias despite the automatic stay. Before this court is Celtic's motion to proceed against Tovias. For the following reasons, the motion is granted:

**Background**

According to Celtic's complaint, on May 18, 2007, Celtic loaned $450,000 to Executive Title in connection with the financing and purchase of real property located in Cicero, Illinois (the "Property"). (Id. ¶ 1.) This loan was secured by, among other things, a promissory note executed by Executive Title and an Unconditional Guarantee (the "Guarantee") signed by Tovias promising to "repay any and all sums due and owing in connection with the Loan." (Id.) Specifically, the Guarantee states that Tovias "unconditionally guarantees payment to Lender of all amounts owing under the Note," and it further states that Tovias "must pay all amounts due under the Note when Lender makes written demand upon Guarantor." (Id., Ex. C ¶ 1.) Celtic claims that Executive Title defaulted on the loan on November 14, 2014. (R. 1, Compl. ¶ 24.) In addition to seeking foreclosure on the Property, Celtic also seeks a judgment for breach of the Guarantee against Tovias. (Id. ¶¶ 41-44.)

After consenting to this court's jurisdiction under 28 U.S.C. § 636(c), the parties attended a status hearing on April 20, 2015. (R. 24, Apr. 20, 2015 Order.) Executive Title reported at the status hearing that it was seeking to refinance the loan to resolve the case. (Id.) The court took this into account and issued a written discovery schedule to allow Executive Title additional time to refinance the subject loan. (Id.) On July 20, 2015, the defendants advised the court that Executive Title had filed for bankruptcy and argued for a stay of the entire case. (R. 25, July 20, 2015 Order.)

On August 11, 2015, Celtic filed the current motion to proceed against Tovias. (R. 27.) Tovias objects and argues that the motion should be denied because, according to her: (1) Celtic's motion is premature; (2) Executive Title's Chapter 11 confirmation will create a new contract, possibly precluding any action against her; (3) there was no loan default; and (4) Celtic is fully secured in the bankruptcy proceeding. (R. 39, Def.'s Resp. ¶ 4.) In her response, Tovias also denies the existence of the promissory note between Executive Title and Celtic and the existence of the Guarantee underlying that note. (Id. ¶ 5.)

**Analysis**

Section 362 of the Bankruptcy Code precludes "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a)(1). Although this automatic stay provision prevents on-going litigation against a debtor, the general rule in this circuit is that "'plaintiffs are free to pursue the debtor's codefendants'" regardless of the automatic stay. *Lee v. RCN Corp.*, No. 03 CV 5866, 2004 WL 2108577, at *1 (N.D. Ill. Sept. 20, 2004) (emphasis omitted) (quoting *In re Koop*, No. 00–B–24471, 2002 WL 1046700, at *3 (Bankr. N.D. Ill. May 23, 2002)). That is because the stay provision was designed "to protect the assets of the debtor for the benefit of creditors," not to "afford collateral benefits to non-debtor parties involved in litigation with the debtor as party defendants or as co-defendants." *Id.* (internal quotation omitted).

The Seventh Circuit recognizes two exceptions to this general rule to be applied only in unusual circumstances. *Id*. First, a suit may not proceed against non-debtor codefendants where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (quotation omitted). Second, the litigation stay may apply concurrently to a debtor's guarantor "where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate or the reorganization plan 'irreparable harm.'" *Id*.

In response to Celtic's present motion, Tovias does not argue that either of these recognized exceptions applies, and even if she had, Celtic persuasively argues that neither would justify extending the automatic stay to her. The first exception only kicks in where litigation against the non-debtor, here Tovias, threatens the property of the bankruptcy estate, such as where the debtor party has an absolute duty to indemnify the non-debtor. *In re Kmart Corp.*, 285 B.R. 679, 688 (Bankr. N.D. Ill. 2002). But here, the debtor (Executive Title) has not agreed to indemnify the non-debtor codefendant (Tovias), so any ruling against Tovias would in no way affect Executive Title's assets. In other words, because Tovias signed an absolute Guarantee of the loan, Celtic can satisfy its claims without going after Executive Title's assets. The second exception contemplates situations where the pending litigation against a third party would cause the debtor irreparable harm. *Id.* at 688.

4

But Tovias has put forth no evidence to show that an adverse ruling against her in this case would in any way harm Executive Title, let alone cause "irreparable harm."[1] Thus, even if Tovias had not forfeited these arguments by failing to raise them in her response, neither of the recognized exceptions justifies delaying this litigation with respect to her.

Instead of asserting the exceptions to the general rule, Tovias relies entirely on an out-of-circuit case, *Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439 (6th Cir. 1993), to argue that a separate exception exists here. She argues that under *Coffey*, a stay should concurrently apply to a guarantor where liability and the amount of the underlying debt are not yet determined, and particularly where a guarantor has filed a counterclaim. (R. 39, Def.'s Resp. ¶ 8.) But Tovias misapplies the *Coffey* holding. In *Coffey*, creditors brought an action against a guarantor in connection with the purchase and sale of a marina and houseboat rental business. *Coffey*, 992 F.2d at 1441-42. Although the principal debtor had filed for Chapter 11 Bankruptcy relief, the district court entered summary judgment against the guarantor after finding that the debtor had failed to perform its obligations. *Id.* at 1442-43. On appeal, the guarantor argued that the district court could not determine his liability until there was an appropriate determination of the debtor's obligation, which the guarantor argued was precluded by the debtor's bankruptcy

---

[1] Moreover, "[t]he weight of authority . . . holds that a request to extend a § 362 stay must be filed in the court where the bankruptcy action pends, and further, that the request is to be filed by the debtor." *Hamilton v. American Corrective Counseling Servs., Inc.*, No. 3:05-CV-434-RM, 2009 WL 973447, at *3 (N.D. Ind. Apr. 8, 2009). Nothing in the parties' current submissions indicates that Executive Title has taken that step.

5

proceedings. *Id.* at 1449. The Sixth Circuit rejected this argument, noting that the guaranty was "not in any way contingent upon the final outcome of [the debtor's] bankruptcy" and that discharge of the debtor in bankruptcy would not impact the guarantor's liability. *Id.* Although the court recognized that the guarantor's exact obligation could not be determined until the debtor's obligation on the underlying contract was resolved, the court specifically held that the merits of the debtor's set-off claims could be adjudicated by the district court despite the debtor's bankruptcy filing. *Id.* at 1449-50; *see also Fifth Third Bank v. Zayat Stables, LLC*, No. 5:09-cv-401-KKC, 2010 WL 2464986, at *2 (E.D. Ky. June 14, 2010) (holding that *Coffey* supports the notion that "set-off claims could be resolved by the district court, so that the obligation of the guarantors on the underlying contract would be known"). Accordingly, contrary to Tovias's argument, *Coffey* actually supports Celtic's position that the case should proceed against Tovias without delay.

Tovias also argues that Celtic's motion to proceed should be denied because, she says, Executive Title's Chapter 11 confirmation will necessarily form a new contract between the parties, precluding any action against her. (R. 39, Def.'s Resp. ¶ 14.) First, this argument is speculative because the Chapter 11 plan that Tovias relies on has not yet even been filed. (Id. ¶ 17.) Second, Tovias assumes that the Chapter 11 plan will somehow discharge her liability rather than simply reduce the amount for which she is liable. Although Tovias is correct that a confirmed Chapter 11 plan constitutes a binding contract, *see In re Schreiber*, 163 B.R. 327, 333 (Bankr. N.D. Ill. 1994), she would not be a party to this new contract. In other words, any

6

new contract that arises out of the bankruptcy proceedings will have no effect on Tovias's liability, if any, under the Guarantee. *See In re White*, 415 B.R. 696, 699 (N.D. Ill. Bankr. 2009) ("The liability of a guarantor to the creditor is separate from the liability of the primary debtor."); *see also In re Stroller's, Inc.*, 93 B.R. 628, 635-36 (Bankr. N.D. Ind. 1988) (noting that "bankruptcy proceedings do not affect the liabilities of co-debtors and guarantors"). And as Celtic points out, Tovias's argument ignores the purpose of guaranty agreements, which is to protect the creditor from non-payment should the principal debtor become unable to pay. If the automatic bankruptcy stay provisions were routinely extended to the debtor's guarantors, lenders would have no incentive to enter into such agreements because they could never be sure of efficient recourse in the event of the debtor's bankruptcy. (R. 43, Pl.'s Reply at 6-7.) Accordingly, Tovias has not demonstrated that any new contract arising out of Executive Title's bankruptcy would justify an exception to the general rule that litigation against third-party guarantors is permitted despite the automatic bankruptcy stay with respect to the debtor. *See In re White*, 415 B.R. at 699.

Finally, Tovias argues that there is no need to proceed against her now because she asserts that there was no default and that Celtic is fully secured in the bankruptcy proceeding. (R. 39, Def.'s Resp. ¶¶ 28-31.) According to her, Celtic has over $77,000 in equity cushion for the underlying debt under the note and thus is adequately protected. (Id. ¶ 31.) But Celtic asserts that the amount due under the Guarantee exceeds the value of the Property when accrued interest, late charges,

7

and fees are taken into account. (R. 43, Pl.'s Reply at 7.) Even if Tovias is correct on the level of Celtic's security, a factual issue the court is unable to address in the context of the present motion, she has not explained how that fact counsels in favor of extending the stay to her under 11 U.S.C. § 362(a)(1). The same is true with respect to Tovias's dispute that Executive Title defaulted on its loan. She has not explained how these disputes play into either of the exceptions to the general rule that litigation may move forward against a third-party guarantor. Accordingly, the case must proceed against Tovias without further delay.

## Conclusion

For the foregoing reasons, the motion to proceed against Tovias is granted.

**ENTER:**

_____
**Young B. Kim
United States Magistrate Judge**

8